UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
4 B's REALTY 1530 CR39, LLC,

        Plaintiff,        <u>REPORT AND</u>
                    <u>RECOMMENDATION</u>
 -against-
                    CV 08-2694 (ADS) (ETB)

ANGELO TOSCANO, SOUTHAMPTON BRICK
& TILE, LLC, UNITED STATES OF AMERICA,
STATE OF NEW YORK, ABC CORP., XYZ
CORP. (Said names being fictitious, it being the
intention of Plaintiff to designate any and all
occupants or premises being foreclosed herein, and
any parties, corporations or entities, if any, having
or claiming an interest or lien upon the Mortgaged
Premises),

        Defendants.
-----------------------------------------------------------------------x

TO THE HONORABLE ARTHUR D. SPATT, United States District Judge:

   Plaintiff commenced the within action in state court in November 2007, seeking to foreclose a mortgage on real property located in Southampton, New York. The action was removed to this court in July 2008 and plaintiff was awarded summary judgment of foreclosure on March 12, 2009. Plaintiff seeks $1,700,000 in damages due and owing under the mortgage, as well as interest, late fees and attorney's fees and costs. For the following reasons, I recommend that plaintiff be awarded damages in the amount of $2,536,850.94, plus additional interest and late fees to be calculated through the date of judgment entered herein, as well as post-judgment interest.

FACTS

Familiarity with the underlying facts of this action is presumed. By Memorandum of Decision and Order dated March 12, 2009, Judge Spatt granted summary judgment to the plaintiff, 4 B's Realty 1530 CR39, LLC ("4 B's Realty"), and ordered the mortgage at issue herein foreclosed. On November 7, 2009, Judge Spatt again granted summary judgment to 4 B's Realty, this time with respect to defendant Angelo Toscano's ("Toscano") counterclaims and third-party claims. By Order dated November 14, 2009, Judge Spatt referred the action to the undersigned to compute the amount due and owing to 4 B's Realty under the mortgage foreclosed upon. An inquest on damages was held before the undersigned on January 14, 2010. Both parties appeared at the inquest.

DISCUSSION

I. The Mortgage and Promissory Note

The mortgage and promissory note (the "Note") at issue herein were executed by Toscano on October 26, 2004 for the principal sum of $1,700,000. (Pl. Ex. 4-5.) The Note was guaranteed by SBT, an entity in which Toscano owns a fifty percent (50%) stake and the remaining interest is held by a separate corporation controlled by Bert Brodsky ("Brodsky") and Barnett Brown ("Brown"), the principals of plaintiff 4 B's Realty. (Pl. Ex. 6.) Pursuant to the terms of the mortgage and the Note, Toscano was required to pay only interest on the principal balance from November 26, 2004 until October 26, 2006 (the "Maturity Date"). (Pl. Ex. 4 at 1.) Upon the Maturity Date, the unpaid balance, as well as the interest accrued thereon, became fully due and payable. (Pl. Ex. 4 at 1.)

After the mortgage reached maturity, any interest due and owing was payable upon demand at a "Default Rate" of three percent (3%) per annum in excess of the effective interest rate at maturity. (Pl. Ex. 4 at 2.) In addition, any principal or interest payment made more than ten (10) days after the due date was subject to a late payment charge of five percent (5%). (Pl. Ex. 4 at 2.) Toscano was also liable for all reasonable attorney's fees and costs arising out of any action to enforce the terms of the Note and mortgage. (Pl. Ex. 4 at 5-6.)

Toscano defaulted on the mortgage and Note on March 31, 2007. As guarantors of the Note, Brodsky and Brown were liable for Toscano's obligation to HSBC, the holder of the Note and mortgage at the time. In exchange for satisfying the Note, HSBC assigned the mortgage on the property to 4 B's Realty on October 4, 2007. (Pl. Ex. 7.)

II. Damages

A. Principal Balance

As demonstrated by the testimony and documentary evidence presented at the inquest held on January 14, 2010, the principal balance due and owing on the foreclosed mortgage and Note at issue herein amounts to $1,700,000. Toscano does not dispute this amount. Accordingly, I recommend that 4 B's Realty be awarded the principal balance of $1,700,000.

B. Interest

The crux of the dispute between the parties is the amount of interest due and owing under the mortgage and Note. Plaintiff's witness, Stephen Linker ("Linker"), a certified public accountant, testified at the inquest that he calculated interest on the principal balance of

$1,700,000 from March 31, 2007 - the date of default - through December 30, 2009. (Tr. 24.) Linker used the LIBOR rate to calculate interest, as specified in the Note, which directs that interest be computed at "a variable rate equal to the LIBOR rate available to the Bank for contract periods of thirty (30) days up to twelve (12) months as elected by Borrower plus 200 basis points." (Pl. Ex. 4.) Linker testified that he used the 30-day LIBOR rate listed as of March 31, 2007 and added the 200 basis points, as directed by the Note, which amounts to two percent (2%) over the LIBOR rate. (Tr. 24-25.) Linker also added an additional 300 basis points - or three percent above the LIBOR interest rate - to calculate the Default Rate, as specified in the Note. (Tr. 25.) The interest rate computed by Linker amounted to 10.3195 percent (10.3195%) and the total interest calculated through December 31, 2009 amounted to $567,488.91. (Tr. 25.)

On cross-examination, however, Linker admitted that he mistakenly used the wrong LIBOR rate when calculating interest. (Tr. 33-35.) Although Linker stated in his affidavit in support of plaintiff's damages that he used the lowest LIBOR rate available in March 2007 when calculating interest - the 30-day rate of 5.3195% - a review of the LIBOR rates available at that time demonstrates that the twelve-month rate of 5.2009% was actually lower. (Tr. 32-33; Pl. Ex. 8.) Linker indicated that he would "select the lower rate and make that calculation" after the close of the inquest on January 14, 2010, (Tr. 35); however, no such revised calculation was ever submitted to the Court.[1] Accordingly, I recommend that the lower interest rate - the twelve-

---

[1] Linker and plaintiff's counsel were also directed to submit a per diem interest calculation so that the Court could bring the interest due up to date. (Tr. 30) While plaintiff's counsel complied with this instruction, the per diem interest calculation submitted used the 30-day LIBOR rate of 5.3195%, which Linker admitted at the inquest was the incorrect interest rate to be applied. Accordingly, the per diem interest calculation submitted is of no assistance to the Court.

month LIBOR rate of 5.2009% - be used to compute interest.  After adding the additional 500 basis points - or five percent (5%) - as specified in the Note, the interest rate to be applied is 10.2009%.

The parties also dispute whether the interest is to be compounded daily, as Linker calculated it.  While the word "compounding" does not appear anywhere in the Note, (Tr. 38), Linker testified that he compounded the interest on a daily basis based on the language in the Note that "[i]nterest shall be computed on an actual/360 day basis (i.e. interest for each day during which any unpaid balance of this Note is outstanding shall be computed at the interest rate hereunder divided by 360)."[2]  (Tr. 37-38; Pl. Ex. 4 at 1.)  Linker based his conclusion that the interest should be compounded daily on his many years of experience as a certified public accountant.  (Tr. 39.)

I credit Linker's testimony and find that plaintiff is correct in compounding the interest daily.  Toscano had the opportunity to bring in his own expert at the inquest to rebut Linker's calculations, but chose not to do so.

With respect to the amount of interest due and owing, Linker testified that he calculated interest from March 31, 2007 through December 30, 2009, for a total of 1,005 days.  Following the inquest, plaintiff's counsel submitted a revised interest calculation that computes interest at a rate of 7.3117% from March 31, 2007 to October 4, 2007, which reflects the rate at which HSBC calculated interest prior to the assignment of the mortgage to 4 B's Realty.  (Tr. 47; Pl. Ex. 21.)

---

[2] Although there are 365 days in a year, according to the "Bankers Rule," which is widely used in the United States, "exact time" uses the precise number of days for the time of the loan and "[a]ssumes that each year has 360 days."
http://www.moneyinstructor.com/art/simpleinterest.asp (last visited Mar. 4, 2010).

After October 4, 2007, interest was calculated at the default rate of 10.3195%, which as discussed above, the undersigned recommends lowering to 10.2009%, based on the LIBOR rates in existence at the time. When compounded daily at a rate of 7.3117%, the interest due and owing from March 31, 2007 to October 4, 2007 is $65,801.36. Similarly, when compounded daily at the recommended default rate of 10.2009%, the interest due and owing from October 5, 2007 through the date of this Report and Recommendation amounts to $484,451.69. See http://www.pine-grove.com/Web%20Calculators/interest.htm (last visited Mar. 4, 2010).

Based on the foregoing, I recommend that 4 B's Realty be awarded interest through the date of this Report and Recommendation in the amount of $550,253.05, with additional interest through the date of judgment, to be calculated by the Clerk of the Court at a rate of 10.2009%.

    C.    <u>Attorney's Fees and Costs</u>

Pursuant to the Note, plaintiff is entitled to recover its reasonable attorney's fees incurred in enforcing the terms of the Note. (Pl. Ex. 4 at 5-6.) Plaintiff requests legal fees and costs in the amount of $150,633.48.[3] (Lynn Aff. ¶ 11 and Pl. Schedule of Payoff.) Toscano opposes plaintiff's request, arguing that this was not a complex action and that the plaintiff's attorneys engaged in duplicative billing. Toscano asserts that the attorney's fees awarded should not exceed $25,000. (Def. Hearing Mem. of Law 7-8.)

In the Second Circuit, attorney's fees are determined by calculating the "presumptively

---

[3] Plaintiff's counsel notes for the Court that although the billing records submitted in support of the request for attorney's fees total $162,742.65, the amount of $12,109.17 was incorrectly invoiced to plaintiff's file. Accordingly, the amount of attorney's fees and costs incurred is actually $150,633.48. (Lynn Aff. ¶ 37 and Analysis of Interest on Legal Fees, annexed to Linker Aff.) Plaintiff does not separate out the attorney's fees incurred from the costs expended, but rather requests a total amount of $150,633.48.

reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117-18 (2d Cir. 2007), amended on other grounds, 522 F.3d 182 (2d Cir. 2008). The court determines the presumptively reasonable fee by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 453 (1983). The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed. See id. at 433; Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) ("The party seeking the award bears 'the burden of documenting the hours reasonably spent by counsel . . . .'"). Accordingly, the party seeking an award of attorney's fees must support its application by providing contemporaneous time records that detail "for each attorney [and legal assistant], the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

In determining what constitutes a "reasonable hourly rate," the court should look to the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"[4] Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stevenson, 465 U.S. 886, 896 n.11 (1984)). "The relevant community to which the court should look is the district in which the case was brought." Marisol A. v. Guiliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987); see also Arbor Hill, 493 F.3d at 118 (stating that the "community" for purposes of calculating attorney's fees "is the district where the district court

---

[4] The Second Circuit has defined the reasonable hourly rate as "the rate a paying client would be willing to pay." Arbor Hill, 493 F.3d at 117

sits'") (citation omitted).

The determination of what constitutes a reasonable hourly rate also "requires the submission of information 'concerning the credentials or experience of counsel applying for fees.'" Molefi v. Oppenheimer Trust, No. 03 CV 5631, 2007 U.S. Dist. LEXIS 10554, at *16 (E.D.N.Y. Feb. 15, 2007) (quoting Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179, at *4 (S.D.N.Y. Dec. 23, 2003)). Where such information is lacking, the court may reduce the award of attorney's fees accordingly. See Molefi, 2007 U.S. Dist. LEXIS 10554, at *16 (citation omitted); see also Marano v. Aaboe, No. 05 Civ. 9375, 2007 U.S. Dist. LEXIS 80154, at *9 (S.D.N.Y. Oct. 29, 2007) (reducing plaintiff's counsel's requested hourly rate where counsel failed to "provide any details as to her skill, experience or reputation" in order to support the rate requested).

With respect to attorney's fees in general in this district, "[a] review of recent cases . . . indicates that the range of appropriate billing rates is $200 - $375 per hour for partners and $100 - $295 per hour for associates." Melnick v. Press, No. 06-CV-6686, 2009 U.S. Dist. LEXIS 77609, at *32 (E.D.N.Y. Aug. 28, 2009) (collecting cases); see also Gutman v. Klein, No. 03 Civ. 1570, 2009 U.S. Dist. LEXIS 123057, at *8 (E.D.N.Y. Oct. 9, 2009) (approving rates of $300 to $400 for partners, $200 to $300 for senior associates, and $100 to $200 for junior associates); Duverger v. C&C Duplicators, Inc., No. 08-CV-0721, 2009 U.S. Dist. LEXIS 53859, at *7 (E.D.N.Y. June 25, 2009) (finding appropriate billing rates in this district to be $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and $70 to $80 for legal assistants); Cruz v. Henry Modell & Co., No. CV 05-1450, 2008 U.S. Dist. LEXIS 25339, at *23 (E.D.N.Y. Mar. 31, 2008) ("Overall, hourly rates for attorneys approved in

recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants.").

Here, plaintiff seeks fees for the following attorneys who expended time on its behalf: (1) Robert P. Lynn, Jr., a partner with more than forty years of experience in complex civil and commercial litigation, whose billing rate is $420 per hour; (2) Kenneth L. Gartner, a partner with more than thirty years of litigation experience, whose billing rate is also $420 per hour; (3) John W. Dunne, a partner with approximately sixteen years of litigation experience, whose billing rate is also $420 per hour; and, (4) Stephen W. Livingston, for whom no biographical information was provided, but whose billing rate is $225 per hour.[5] (Lynn Aff. ¶ 33 and Ex. 9 and 12, annexed thereto.)

Based on the case law in this district, I find that the hourly billing rates requested by plaintiff's counsel, while on the higher side of the continuum, still fall within the range considered fair and reasonable. Accordingly, I recommend awarding plaintiff the billing rates requested.

With respect to the number of hours expended in this action, I have reviewed the billing records provided and conclude that the hours spent are reasonable. This was not as simple an action as Toscano would have the Court believe. Rather, it was a very long and protracted litigation, due mostly to Toscano's efforts to frustrate a resolution at every turn. Even after Judge Spatt granted plaintiff summary judgment on its foreclosure claim, Toscano still sought to

---

[5] A review of plaintiff's counsel's website demonstrates that Mr. Livingston is a mid-level associate who has been practicing law since 2006.

relitigate issues already disposed of by Judge Spatt at the inquest held before the undersigned. Accordingly, the hours incurred by plaintiff's counsel were necessary and reasonable.

"Attorney's fees awards [also] include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting United States Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)); see also Miltland Raleigh-Durham v. Meyers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.") (quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987)) (additional citation omitted). "However, expenses which are part of the attorney's ordinary overhead are not to be reimbursed." SEC v. Goren, 272 F. Supp. 2d 202, 214 (E.D.N.Y. 2003) (citing New York State Nat'l Org. for Women v. Terry, 737 F. Supp. 1350, 1363 (S.D.N.Y. 1990).

The expenditures incurred in the within action include costs for legal research, photocopies, facsimiles, postage and delivery fees, court reporters, transcripts, process servers, court imposed filing fees, expert fees and travel-related expenses, all of which are routinely recoverable. See, e.g., Rosco, Inc. v. Mirror Lite Co., No. CV 96-5658, 2009 U.S. Dist. LEXIS 99407, at *8-10 (E.D.N.Y. Oct. 26, 2009) (finding expert fees to be recoverable); Simmons v. New York City Transit Auth., No. CV 02-1575, 2008 U.S. Dist. LEXIS 16949, at *22-23 (E.D.N.Y. Mar. 4, 2008), vacated and remanded on other grounds, 575 F.3d 170 (2d Cir. 2009) (finding costs relating to "filing fees, process servers, postage, travel and photocopying" to be recoverable); Cho, 524 F. Supp. 2d at 212 (reimbursing plaintiff for costs related to "Federal

Express, reproduction, telephone, facsimile, postage, deposition services, [and] deposition/hearing transcripts" as well as legal research); Reiter v. Metro. Transp. Auth. of N.Y., No. 01 Civ. 2762, 2007 U.S. Dist. LEXIS 71008, at *7 (S.D.N.Y. Sept. 25, 2007) (stating that a "prevailing party in an action under Title VII may recover, in the court's discretion, . . . expert fees as part of the costs"); Int'l Consulting Servs., Ltd. v. Cheap Tickets, Inc., No. 01-CV-4768, 2007 U.S. Dist. LEXIS 71689, at *26 (E.D.N.Y. Sept. 12, 2007) (finding costs related to electronic research reasonable and awarding costs requested); In re Merrill Lynch & Co. Research Reports Secs. Litig., No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 9450, at *79 (S.D.N.Y. Jan. 31, 2007) (finding expenses for transportation to be reasonable and recoverable); Molefi, 2007 U.S. Dist. LEXIS 10554, at *25 (finding that "costs associated with mailings, photocopies, and court fees . . . are precisely the type of costs that may be included in an award of attorney's fees").

Accordingly, I recommend that plaintiff be granted the attorney's fees and costs requested in the amount of $150,633.48.

D. Interest on Legal Fees

Pursuant to Paragraph 23 of the mortgage, any monies expended by plaintiff in connection with any litigation arising out of the mortgage "shall bear interest at the default interest rate set forth in the . . . Note." (Pl. Ex. 5 ¶ 23.) Accordingly, I recommend that plaintiff be awarded interest on it's attorney's fees award at the recommended default rate of 10.2009%, compounded daily. Plaintiff provided a schedule of the dates of payment for each of the invoices received from its counsel and calculated interest from each date of payment through December 31, 2009. (See Analysis of Interest on Legal Fees, annexed to Linker Aff.) The Court has

applied the same method to calculate the interest due and owing through the date of this Report and Recommendation but has revised the calculations to account for the lower recommended interest rate.

Based on the foregoing, I recommend that plaintiff be awarded interest on its award of attorney's fees and costs in the amount of $15,161.96. As recommended supra, additional interest should be calculated through the date of judgment at the default rate of 10.2009.%, which computes to a per diem interest amount of $675.23 from March 9, 2010 through the date of judgment entered herein.[6]

    E.       Late Fees

Toscano challenges the late fees sought herein on the ground that such damages are not included anywhere in plaintiff's Complaint. While Toscano is correct that the Complaint does not explicitly request that late fees be awarded, the Complaint does expressly incorporate "Schedule C" attached to it, which is the Note at issue herein. (Compl. ¶ 12.) As discussed above, the Note specifically states that "[a] late payment charge of five (5%) percent of any principal or interest payment made more than ten (10) days after the due date thereof shall be due with any such late payment (the "Late Payment Charge"). (Pl. Ex. 4 at 2.) Since any "written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10( c), plaintiff's request for late fees is included in its Complaint.

Accordingly, I recommend that plaintiff be awarded late fees equal to five percent (5%)

---

[6] The per diem interest calculation is as follows: Principal ($1,700,000) + Interest Due to Date ($550,253.07) + Attorney's Fees and Costs ($150,633.48) + Interest Due to Date on Legal Fees ($15,161.96) x Default Interest Rate (10.2009%) divided by 365 days = $675.23 per day.

of the outstanding principal and interest. As of the date of this Report and Recommendation, the amount of late fees due and owing is $120,802.43. I further recommend that additional late fees be calculated through the date of judgment at a per diem rate of $33.76 from March 9, 2010 through the date of judgment.[7]

    F.    Post-Judgment Interest

28 U.S.C. § 1961 states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Such interest shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Id. This interest is to be "computed daily to the date of payment." Id. § 1961(b).

"Post-judgment interest serves as a means to 'compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant.'" Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 101 (2d Cir. 2004) (quoting Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835-36 (1990)). The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered. See 28 U.S.C. § 1961(a) (stating that "[i]nterest *shall* be allowed") (emphasis added); see also Westinghouse, 371 F.3d at 100 (stating that "[t]here is no question but that the post-judgment interest awarded in this case was mandatory under § 1961"); Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The

---

    [7] The per diem late fee calculation is as follows: Daily Interest ($675.23) x Late fee (5%) = $33.76 per day.

award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."). Accordingly, I recommend that plaintiff be awarded post-judgment interest on its monetary award, to be calculated pursuant to 28 U.S.C. § 1961.

## RECOMMENDATION

For the foregoing reasons, I recommend that plaintiff be awarded damages as follows: (1) the principal amount of the mortgage and promissory note in the amount of $1,700,000; (2) interest in the amount of $550,253.07; (3) attorney's fees and costs in the amount of $150,633.48; (4) interest on the attorney's fees and costs in the amount of $15,161.96; (5) a late penalty in the amount of $120,802.43; and, (6) post-judgment interest, to be calculated pursuant to 28 U.S.C. §1961. The total monetary award recommended amounts to $2,536,850.94.

I further recommend that additional interest be calculated from March 9, 2010 through the date of judgment entered herein at a rate of $675.23 per day and that additional late fees also be calculated from March 9, 2010 through the date of judgment at a per diem rate of $33.76.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Failure to file objections within fourteen (14) days will preclude further appellate review. Thomas v. Arn, 474 U.S. 140, 145 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED:**

Dated: Central Islip, New York
      March 8, 2010

                                            /s/ E. Thomas Boyle
                                            E. THOMAS BOYLE
                                            United States Magistrate Judge