# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

4 B'S REALTY 1530 CR39, LLC,

|                          |
|--------------------------|
| Plaintiff,               |

Case No. **08-2694-ADS-ETB**

   - against -

ANGELO TOSCANO, SOUTHAMPTON BRICK AND TILE,
LLC, UNITED STATES OF AMERICA, STATE OF NEW
YORK, ABC CORP., XYZ CORP.,
(Said names being fictitious, it being the intention of Plaintiff to
designate any and all occupants of premises being foreclosed
herein, and any parties, corporations or entitles, if any, having or
claiming an interest or lien upon the Mortgaged Premises.)

                                       Defendants.

-------------------------------------------------------------------------------X

ANGELO TOSCANO,

                            Third-Party Plaintiff,

   - against -

BERT E. BRODSKY and BARNETT BROWN,

                            Third-Party Defendants.

-------------------------------------------------------------------------------X

### REPLY TO DEFENDANT'S OBJECTIONS TO
### MAGISTRATE BOYLE'S REPORT AND
### RECOMMENDATION

LYNN, GARTNER & DUNNE, LLP
*Attorneys for Plaintiff*
*4B's Realty 1530 CR29, LLC*
330 Old Country Road, Suite 103
Mineola, New York 11501
(516) 742-6200

<u>Of Counsel</u>
Robert P. Lynn, Jr.
John W. Dunne
Stephen W. Livingston

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................. i

Preliminary Statement ......................................................................................................... 1

Procedural Posture and Background .................................................................................... 2

Argument

I.      Standard of Review ................................................................................................. 3

II.     The Limited Nature of the Report and Recommendation ...................................... 4

III.    An Assignee of a Mortgage Steps into the Shoes of Assignor ............................. 6

IV.    The Promissory Note and Mortgage ..................................................................... 7

          Calculation of Interest ........................................................................................... 7

          Late Fees ................................................................................................................ 9

V.     Legal Fees ............................................................................................................ 11

Conclusion ......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Barratt v. Joie*,
  No. 96-CV-324, 2002 WL 335014 (S.D.N.Y. Mar. 4, 2002) ...................................................... 3
*Braunstein v. Barber*,
  2009 WL 1542707 (S.D.N.Y. June 2, 2009) ................................................................................ 3
*Camardo v. General Motors Hourly-Rate Employees Pension Plan*,
  806 F. Supp. 380 (W.D.N.Y. 1992) .............................................................................................. 3
*Cho v. Koam Medical Services P.C.*,
  524 F.Supp.2d 202 (E.D.N.Y. 2007) .......................................................................................... 15
*Citibank N.A. v. Tele/Resources, Inc.*,
  724 F.2d 266 (2d Cir. 1983).......................................................................................................... 11
*Kassim v. City of Schenectady*,
  415 F.3d 246 (2d Cir. 2005) ........................................................................................................15
*Kochisarli v. Tenoso*,
  2008 WL 1882662 (E.D.N.Y. 2008)............................................................................................. 6
*Nelson v. Smith*,
  618 F.Supp. 1186 (S.D.N.Y. 1985) ............................................................................................. 3
*Paulemon v. Tobin*,
  30 F.3d 307 (2d Cir. 1994)............................................................................................................. 9
*Vilkhu v. City of New York*,
  2009 WL 1851019 (E.D.N.Y. 2009)............................................................................................ 15
*Ward v. Sun Valley Foods Co., Inc.*,
  212 Fed. Appx. 386 (6th Cir. 2006) ............................................................................................ 11

## State Cases

*243 West 98th Condominium v. Shapiro*,
  12 A.D.3d 591, 786 N.Y.S.2d 87 (2d Dep't 2004)...................................................................... 4
*6820 Ridge Realty, LLC v. Goldman*,
  263 A.D.2d 22, 701 N.Y.S. 69 (2d Dep't 1999)........................................................................ 12
*Aetna Casualty & Sur. Co. v. McCullough*,
  41 A.D.2d 161, 341 N.Y.S.2d 424 (1st Dep't 1973) ......................................................... 6, 8, 11
*Centerbank v. D'Assaro*,
  et al., 600 N.Y.S.2d 1015 (Sup. Ct. Suffolk Co. 1993) .......................................................... 10
*Flushing Savings Bank v. CCN Realty Corp.*,
  73 A.D.2d 945, 424 N.Y.S.2d 27 (2d Dep't 1980)..................................................................... 12
*Fourth Fed. Savings Bank v. Nationwide Associates, Inc.*,
  183 Misc.2d 165, 701 N.Y.S.2d 814 (Sup. Ct. NY Co. 1999) .................................................. 5
*I&I Holding Corp. v. Gainsburg*,
  251 A.D. 550, 296 N.Y.S. 752 (1st Dep't 1937)......................................................................... 10
*In re West Bushwick Urban Renewal Area Phase 2*,
  50 A.D.3d 695, 855 N.Y.S.2d 582 (2d Dep't 2008)..................................................................... 9

*Jeferne, Inc. v. Capanegro*,
    96 A.D.2d 577, 465 N.Y.S.2d 270 (2d Dep't 1983) ..................................................... 6
*Kobert v. National Machinery Co.*,
    233 App. Div. 234, 251 N.Y.S. 450 (1st Dep't 1931), ............................................... 10
*L.H. Feder Corp. v. Bozkurtian*,
    48 A.D.2d 701, 368 N.Y.S.2d 247 (2d Dep't 1975) .................................................... 5
*Mortgage Electronic Registration Systems, Inc. v. Maki*,
    9 Misc.3d 983, 801 N.Y.S.2d 515 (Sup. Ct. Seneca Co. 2005) ................................... 5
*Roddy-Eden v. Berle*,
    202 Misc. 261, 108 N.Y.S. 597 (Sup. Ct. NY Co. 1951) ......................................... 10
*SO/Bluestar, LLC v. Canarsie Hotel Corp.*,
    33 A.D.3d 985, 825 N.Y.S.2d 80 (2d Dep't 2006) ..................................................... 4
*Trans-Resources, Inc. v. Nausch Hogan and Murray*,
    298 A.D.2d 27, 746 N.Y.S.2d 701 (1st Dep't 2002) ........................................... 6, 11

## Federal Statutes

28 U.S.C. §636(b)(1)(C) ................................................................................................... 3

## State Statutes

General Business Law Section 198-a ............................................................................... 13
Real Property Law § 234 ................................................................................................ 14
RPAPL §1311 .................................................................................................................. 12
RPAPL §1321 .................................................................................................................... 5

## Federal Rules

Fed. R. Civ. P. 10(c) ......................................................................................................... 9
Fed. R. Civ. P. 72(b)(3) ..................................................................................................... 3

## Preliminary Statement

This Memorandum responds to the defendant Angelo Toscano's ("Toscano") objections to Magistrate Boyle's report and recommendation dated March 8, 2010.

Toscano's objections parrot his opposition set forth in the Hearing Memorandum of Law submitted by the defendant's counsel at the close of the hearing before Magistrate Boyle on January 14, 2010. (*See*, Docket No. 56).

Once again, Toscano argues that (1) equitable principles require the period for the calculation of interest to be reduced based on an alleged tender which this Court has already held to be "conditional" and for what Toscano alleges was the plaintiff's "wrongful conduct"; (2) the calculation of interest should be simple rather than compound despite the plain language of the note and mortgage stating otherwise and the testimony of the plaintiff's expert on the meaning of the terms of the note; (3) plaintiff was not entitled to the default rate of interest despite the fact that Toscano defaulted and the promissory note required a default rate of interest upon such default; (4) plaintiff is not entitled to late fees despite the fact that the promissory note expressly provides for a late fee to be assessed on the principal balance and outstanding interest; and (5) plaintiff is not entitled to its full amount of its attorney's fees in prosecuting this action and defending Toscano's frivolous counterclaims.

Toscano's claim that the plaintiff's conduct was wrongful and prolonged this lawsuit is absurd. Judge Spatt's decisions confirm the merit of the plaintiff's position and demonstrate the lack of merit to Toscano's fraudulent inducement claim. Toscano conveniently forgets that following this Court's dismissal of Toscano's fraudulent inducement defense, plaintiff requested Toscano stipulate to discontinue his meritless counterclaim. Consistent with his past practice, Toscano obstinately refused, insisted upon pressing his claims, thereby resulting in yet another

successful motion for summary judgment by the plaintiff (*See*, Trial Ex. 3).

The irony of Toscano's argument is that when requesting equitable relief as to the calculation of interest, he somehow seeks to fault the plaintiff for its calculation of the amounts due and owing under the note and mortgage but ignores the fact that Magistrate Boyle, by his report and recommendation, <u>agreed with the plaintiff's methodology!</u> Toscano even goes so far as to state in his objection "shame on [plaintiff's expert] and Mr. Lynn for failing to research [the issue of compound interest]."

It is yet another example of the defendant's approach throughout this matter: Toscano and his attorneys are always right and the other attorneys (even Judges!) are acting shamefully and without knowledge of the law.

Toscano's latest objections are without merit. At the hearing before Magistrate Boyle on January 14, 2010, Toscano offered no witnesses or evidence as to the calculation of the interest, late fees, or attorney's fees. Instead, Toscano chose to rely upon a post-hearing memorandum of law.

Magistrate Boyle correctly calculated the amount due under the note and mortgage as each element of the calculation is supported by the underlying documents. Toscano cannot demonstrate any error but merely offers the same failed arguments set forth in his post-hearing memorandum. Accordingly, the report and recommendation of Magistrate Boyle should be approved and a judgment entered for the amount set forth therein, plus the daily interest, and attorney's fees associated with this reply memorandum.

<u>**Procedural Posture and Background**</u>

For a full recitation of the salient facts and procedural background, Plaintiff re-submits the affirmation of Robert P. Lynn, Jr., Esq., dated December 30, 2009, and the affidavit of

2

Stephen A. Linker, CPA, dated December 29, 2009.[1] The affirmation and affidavit are submitted as Exhibits "1" and "2" herewith.

## ARGUMENT

### I. Standard of Review

Upon the timely submission of a party's objection to the report and recommendation, the District Court reviews the part of the report and recommendation to which the party objected under a *de novo* standard of review. 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

The District Court may adopt those portions of a report and recommendation to which no objections have been made, as long as no clear error is apparent from the face of the record. *See, Braunstein v. Barber*, 2009 WL 1542707, at *1 (S.D.N.Y. June 2, 2009), citing, *Nelson v. Smith*, 618 F.Supp. 1186, 1189 (S.D.N.Y. 1985).

The clearly erroneous standard also applies when a party makes only "conclusory or general objections, or simply reiterates his original arguments." *Braunstein, supra*, at *1, citing, *Barratt v. Joie*, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002); *See also, Camardo v. General Motors Hourly-Rate Employees Pension Pl*an, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (court need not consider objections which are frivolous, conclusory or general and constitute a rehashing of the same arguments and positions taken in original pleadings).

A review of Toscano's post-hearing memorandum of law demonstrates that the instant objection rehashes the same arguments set forth in the submission to Magistrate Boyle. Furthermore, Toscano's objections are conclusory in nature as it pertains to the (1) "equitable

---

[1] The affirmation and affidavit were submitted to Magistrate Boyle per his direction prior to the hearing on January 14, 2010.

principles" objection[2]; (2) calculation of interest at the higher default rate[3]; and (3) the calculation of attorney's fees.

Accordingly, the applicable standard of review should be whether the report is "clearly erroneous."

## II. The Limited Nature of the Report and Recommendation

Toscano argues that the calculation of the amount due under the note and mortgage is subject to equitable principles rather than the terms of the agreements.

This argument misunderstands the nature of the hearing.

Toscano is correct that foreclosure actions are equitable in nature. However, this Court had already granted summary judgment of foreclosure prior to the hearing before Magistrate Boyle on January 14, 2010 and the hearing was scheduled to calculate the amount owed under the note and mortgage.

This Court's November 14, 2009 endorsed order sets forth "[t]he Court hereby refers this matter to United States Magistrate Judge E. Thomas Boyle *__to compute the amount due and owing to the Plaintiff under the mortgage__*." [emphasis added]. (*See*, Docket Entry 45).

The calculation of the amount due under the note and mortgage is governed by the terms therein. *See*, *SO/Bluestar, LLC v. Canarsie Hotel Corp.*, 33 A.D.3d 985, 825 N.Y.S.2d 80 (2d Dep't 2006); *See also*, *243 West 98th Condominium v. Shapiro*, 12 A.D.3d 591, 786 N.Y.S.2d 87 (2d Dep't 2004) (referee required to hold hearing on notice to compute the principal, interest,

---

[2] Plaintiff is uncertain as to the nature of this objection and how Toscano seeks to correct the report and recommendation based on this argument as Magistrate Boyle's report and recommendation contains no discussion of equitable principles. Nevertheless, it appears to be a general objection as there is no specific objection as to any item in the report and recommendation but it merely rehashes the arguments before Judge Spatt as to the alleged tender.

[3] While Toscano's preliminary statement faults Magistrate Boyle for awarding interest at the "penalty rate" (we assume he meant default rate of interest), he offers no explanation as to what rate Magistrate Boyle was required to use or any other basis for this argument.

4

late fees, and reasonable attorneys fees). A referee who has been appointed by a Court to compute the amount due to a mortgagee in an action to foreclose a mortgage pursuant to RPAPL §1321, has no power beyond the order of reference. *Fourth Fed. Savings Bank v. Nationwide Associates, Inc.*, 183 Misc.2d 165, 701 N.Y.S.2d 814 (Sup. Ct. NY Co. 1999); *See also*, *L.H. Feder Corp. v. Bozkurtian*, 48 A.D.2d 701, 368 N.Y.S.2d 247 (2d Dep't 1975) (referee has no power beyond order of reference); *Mortgage Electronic Registration Systems, Inc. v. Maki*, 9 Misc.3d 983, 801 N.Y.S.2d 515 (Sup. Ct. Seneca Co. 2005).

The report and recommendation of Magistrate Boyle does exactly what this Court directed him to do—it calculates the amount due under the note and mortgage based upon Toscano's default as of March 31, 2007. Toscano's arguments regarding the propriety of the alleged tender and the supposed "equitable" argument as to the time period to calculate the interest were not properly before Magistrate Boyle and similarly are improper for submission in the objection to the report and recommendation.

Furthermore, it is undisputed that Toscano defaulted on the loan as of March 31, 2007. Toscano's arguments concerning the alleged "equitable principles" have already been proffered to this Court. Toscano argues that he was justified in refusing to unconditionally meet the plaintiff's demands because plaintiff did not provide a detailed payoff letter in December of 2008 (this argument has already been made to Judge Spatt). (*See*, Objection of Toscano, pp. 3-4). This Court, by its March 12, 2009 Memorandum of Decision and Order, rejected Toscano's argument as to the alleged tender and found that 4B's Realty properly rejected Toscano's December 2008 conditional tender:

> Toscano contends, as a threshold matter, this [sic] his tender of $2,230,735.67 satisfies his obligation on the Note and therefore moots the Plaintiff's attempt to foreclose on the Southampton property. The Plaintiff contends that Toscano's offer of payment

5

was not a tender because it was conditioned on his right to contest the amount due. A tender, by definition, is "an *unconditional* offer of payment, consisting in the actual production...of a sum not less than the amount due on a specific debt or obligation." Kochisarli v. Tenoso, 2008 WL 1882662, at *3 (E.D.N.Y. 2008) (citing 83 N.Y. Jur. 2d Payment and Tender §118) (emphasis added); see Jeferne, Inc. v. Capanegro, 96 A.D.2d 577, 578, 465 N.Y.S.2d 270, 271-72 (2d Dep't 1983) (observing that, in order to be effective, a tender must be unconditional).

Here, it is clear from Kraslow's letter that Toscano's tender was conditioned upon his right to contest the amount due. The Plaintiff was justified in refusing such a tender because it was not a valid satisfaction of Toscano's alleged debt. Having determined that Toscano's conditional tender does not moot the Plaintiff's foreclosure application, the Court now turns to the merits of the Plaintiff's motion for reconsideration.

As such, even if the report and recommendation was to consider this argument regarding the equities of the conditional tender offer, Toscano offers no evidence or authority that demonstrates that the report and recommendation was clearly erroneous.

Accordingly, the report and recommendation was correct to calculate the time period for interest and penalties from March 31, 2007 (the date of the default) through the current time period.

## III. An Assignee of a Mortgage Steps into the Shoes of Assignor

It is black letter law in New York that an assignee of a mortgage steps in the shoes of the assignor and is entitled to seek the entire amount due from the obligor even though the assignee may have paid less than that to the assignor as consideration. *See*, 6A N.Y. Jur.2d Assignments §65.

The recovery of the assignee is not subject to reduction based upon the amount paid in consideration for the assignment. *Trans-Resources, Inc. v. Nausch Hogan and Murray*, 298 A.D.2d 27, 34, 746 N.Y.S.2d 701 (1st Dep't 2002), citing, *Aetna Casualty & Sur. Co. v. McCullough*, 41 A.D.2d 161, 341 N.Y.S.2d 424 (1st Dep't 1973).

6

Here, the plaintiff obtained the assignment from the assignor-mortgagee, HSBC Bank, on October 4, 2007. Under all applicable authority in New York, the assignment is not subject to reduction based upon the amount paid by the plaintiff in consideration for the assignment.

The law does not support Toscano's objection where he argues that "[t]heoretically, under the common law of contribution, Plaintiff should not be entitled to recover from Toscano more than its two principals' pro-rata share of the indebtedness, and then, only if they, in fact paid more than a pro-rata share." (*See*, Objection of Toscano, p. 8). It defies logic that Toscano seeks to argue that the law of contribution between common-defendants somehow should affect the plaintiff-assignee of the promissory note and mortgage.

The plaintiff here is the assignee of the note and mortgage. While Toscano's attorney seeks to obfuscate the issue before this Court by making reference to contribution and pro-rata shares, the simple fact is that the guaranty agreements have no bearing on this case except to explain how it came about that the plaintiff was assigned the note and mortgage.

This case is not governed by the principals of contribution but turns on the law of contract. Clearly, this "equitable" argument as to contribution is without merit and should be ignored.

## IV. The Promissory Note and Mortgage

### Calculation of Interest

Magistrate Boyle's Report and Recommendation calculates the interest at 7.3117% for the time period of March 31, 2007 (the date of the default) through October 4, 2007 (the date of the assignment) which totaled $65,801.36. He further calculated interest at 10.2009% from October 5, 2007 through March 8, 2010 which totaled $484,451.69. (*See*, Report and Recommendation of Magistrate Boyle, March 8, 2010, p. 6).

7

The two-tiered calculation of interest was based upon the interest charged by the original holder of the note (HSBC Bank) for the period of March 31, 2007 through October 4, 2008 to the plaintiff-assignee.[4] Thereafter, Magistrate Boyle applied the default rate of interest as provided for in the promissory note (effective LIBOR rate at the time of default plus 500 basis points).

The first page of the promissory note states that upon maturity the amount of unpaid principal and interest shall become due. (Trial Ex. 4). The note further reiterates at page 3 that upon any event of default "the balance of this obligation, together with interest thereon, shall immediately come due and payable." (*Id.*).

At the hearing before Magistrate Boyle, the Plaintiff's expert testified that although the term "compound interest" was not expressly stated in the note, this provision allows for the computation of compound interest as the interest would be calculated based on the unpaid principal and interest (which is compound interest). In other words, each day was another default upon which the default interest was to be calculated on the outstanding principal balance and the outstanding interest.

The note further provided that interest was to be calculated on a daily basis ("actual/360") which means that the daily rate is the default rate divided by 360.

The promissory note also provided for a higher rate of interest upon default. The default rate is defined as the effective interest rate at the time of default plus 300 basis points. (Trial Ex. 4). The default interest rate is fixed at the time of default—not to be recalculated as a variable rate based upon changes in the LIBOR rates as argued by Toscano.

As noted by Magistrate Boyle, Toscano had the opportunity to offer his own expert to rebut the plaintiff's expert but failed to do so. Thus, Magistrate Boyle credited the opinion of the

---

[4] Plaintiff objected to the two-tiered approach of lowering the applicable interest rate based on the rate the assignor (HSBC) charged to the plaintiff-assignee; plaintiff argued that the principle of New York law that the assignee is entitled to full recovery based on the note because the consideration paid for the assignment is of no consequence.

plaintiff's expert and based on the language of the contract he awarded compound interest.

New York case law provides that the language of the contract is determinative as to whether the party can collect compound interest. *See*, *In re West Bushwick Urban Renewal Area Phase 2*, 50 A.D.3d 695, 855 N.Y.S.2d 582 (2d Dep't 2008). Magistrate Boyle concluded, based on the evidence presented at the hearing, that the language of the contract provided for compound interest. Toscano's objection fails to point to any evidence to the contrary.

Accordingly, the report and recommendation of Magistrate Boyle correctly calculated the amount of interest and compounded the interest as required under the note and mortgage.

Late Fees

Toscano argues that the plaintiff is not entitled to late fees because (1) there is inconsistency between the note and mortgage; (2) the complaint does not expressly seek late fees; and (3) the plaintiff-assignee did not pay late fees to the assignor HSBC Bank.

Each of these arguments is without merit.

Magistrate Boyle determined that the Complaint expressly incorporated the note and mortgage as exhibits and sought all amounts due under the annexed agreements. Toscano does not dispute this finding.

Magistrate Boyle cited to Fed. R. Civ. P. 10(c) which provides that any "written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *See*, *Paulemon v. Tobin*, 30 F.3d 307, 308-309 (2d Cir. 1994) (the complaint "includes any written instrument attached to it as an exhibit and any statements or documents incorporated into it by reference.").

New York Courts follow the same principle holding that when a contract is annexed to a pleading and made part thereof, the writing prevails over the allegations and conclusions of the

9

pleader and where there is a variance between the allegations and the writing, the instrument prevails. *Roddy-Eden v. Berle*, 202 Misc. 261, 108 N.Y.S. 597 (Sup. Ct. NY Co. 1951), citing, *Kobert v. National Machinery Co.*, 233 App. Div. 234, 251 N.Y.S. 450 (1st Dep't 1931), *aff'd*, 258 N.Y. 586, 180 N.E. 344 (1932); *See also, I&I Holding Corp. v. Gainsburg*, 251 A.D. 550, 296 N.Y.S. 752 (1st Dep't 1937) (where contract on which action is based is in writing and attached to complaint as an exhibit, if there is a variance between the contract and allegations of the complaint, the terms of the contract must control).

Thus, Magistrate Boyle held that the plaintiff was entitled to late fees as provided for in the promissory note which was expressly incorporated into the complaint and annexed thereto as an exhibit. The case law cited by Toscano is distinguishable in that it did not involve a promissory note that was expressly incorporated and annexed as an exhibit to the complaint.

With respect to late fees, the note expressly provides that a "late payment charge of 5% of any ***principal or interest*** [emphasis added] payment made more than ten (10) days after the due date thereof shall be due with any such late payment." (Trial Ex. 4). The promissory note required interest-only payments during the term of the note; and principal was to become due at maturity. (*Id.*). Accordingly, the late payment provision expressly provided that upon maturity of the note, Toscano would be obligated to pay a late payment fee if he failed to pay the principal balance within ten (10) days thereof. *Compare, Centerbank v. D'Assaro*, et al., 600 N.Y.S.2d 1015 (Sup. Ct. Suffolk Co. 1993) (late fee for installment payments is not element of damages upon acceleration of the mortgage).

Contrary to Toscano's opinion, the note and mortgage are consistent. While the promissory note provides for late fees after the maturity date, the mortgage provided for late fees based on overdue installment payments. (*Compare*, Objection of Toscano, p. 6). There is no

conflict between the two agreements as argued by Toscano.

Furthermore, Toscano's argument that the plaintiff was not entitled to late fees because it was not required to pay late fees to the assignor of the note and mortgage is without merit. Under New York law, the Courts hold that the recovery of the assignee is not subject to reduction based upon the amount paid in consideration for the assignment. *Trans-Resources, Inc., supra; McCullough, supra.*

In other words, the plaintiff-assignee "steps in the shoes" of the assignor and is entitled to recover the full amount due under the note and mortgage without any regard for the consideration paid for the assignment. *See, Citibank N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 269 (2d Cir. 1983) ("Insofar as the assignment touches on the obligations of the other party to the underlying contract, the assignee simply moves into the shoes of the assignor."); *See also, Ward v. Sun Valley Foods Co., Inc.*, 212 Fed. Appx. 386, 391 (6th Cir. 2006) (unpublished) ("[i]t is fundamental rule of the law of contract that the assignee stands in the shoes of the assignor, possessing the same rights and remaining subject to the same defenses as the assignor.").

Accordingly, Magistrate Boyle correctly recommended an award of late fees as required by the promissory note.

## V. Legal Fees

Toscano does not dispute that under the note and mortgage the plaintiff is entitled to attorney's fees in prosecuting the foreclosure and defending against the counterclaim. Toscano also does not object to the billing rates which were approved by Magistrate Boyle.

Instead, Toscano argues that the plaintiff's legal fees are excessive based on a perceived lack of complexity due to the fact that this matter involved a commercial foreclosure. Toscano argues that "contrary to Plaintiff's attorney's protestations this foreclosure action was not

complex."

Notwithstanding the fact that Toscano has possessed the legal invoices since December 30, 2009, he submits, for the first time on objection to the report and recommendation, a specific objection to the legal fees with respect to (1) research related to the priority of the mortgage vis-à-vis the defendant United States' tax lien and (2) communications between counsel for plaintiff and defendant Southampton Brick & Tile, LLC ("SBT"). However, Toscano fails to identify the invoice containing these items, the time spent by attorneys, or the amount billed.

While Toscano is correct that the United States did not submit an answer to the Complaint after removal, this was the result of our research and correspondence to counsel for the United States, Joseph Rodriguez, Esq., wherein we demonstrated that the plaintiff's mortgage had priority over the tax lien under all applicable law. As opposed to counsel for Toscano, the United States acknowledged that it would be frivolous to dispute the propriety of the plaintiff's mortgage and its priority.

Toscano also seeks to fault the plaintiff for including the sub-tenant of the property, SBT, as a defendant because the sub-tenant is a related entity. This argument fails to acknowledge that New York Real Property Actions and Proceeding Law §1311 requires that all tenants be named as defendants in an action to foreclose. *See, 6820 Ridge Realty, LLC v. Goldman*, 263 A.D.2d 22, 25, 701 N.Y.S. 69, 71-72 (2d Dep't 1999) (Under RPAPL §1311, "tenants are clearly necessary parties to a foreclosure action."); *See also, Flushing Savings Bank v. CCN Realty Corp.*, 73 A.D.2d 945, 424 N.Y.S.2d 27 (2d Dep't 1980).

Toscano fails to acknowledge the procedural complexities wherein the plaintiff was granted reconsideration and summary judgment overturning the decision of the state court after removal.

Toscano's argument also stands in stark contrast to Magistrate Boyle's decision and the history of this matter.

Magistrate Boyle awarded the plaintiff the full amount of attorney's fees sought and held that the amount of hours spent on this matter were reasonable and the billing rates acceptable. Magistrate Boyle reasoned:

> This was not as simple an action as Toscano would have the Court to believe. Rather, it was a very long and protracted litigation, due mostly to Toscano's efforts to frustrate a resolution at every turn. Even after Judge Spatt granted plaintiff summary judgment on its foreclosure claim, Toscano still sought to relitigate issues already disposed of by Judge Spatt at the inquest held before the undersigned. Accordingly, the hours incurred by plaintiff's counsel were necessary and reasonable.
>
> Report and Recommendation of Magistrate Boyle, March 8, 2010, p. 9-10.

The case law authority in New York and the Eastern District demonstrates that Court's will not limit the recovery for attorney's fees based on the amount recovered under the underlying note or the perceived lack of complexity. In considering the application for legal fees, Courts must also consider the effect of the protracted litigation and the deterrent factor provided by expressly bargained for attorney's fees.

In *Reyes v. Talley Motors, Inc.*, NYLJ, August 20, 1992, at 22, col. 6 (Sup. Ct., N.Y. Co. 1992) (Friedman, J.), the Supreme Court held:

> There is ... no reason to limit the fees to be paid based on the amount in controversy. The purpose of the award of attorney's fees is 'to protect consumers from being worn down by protracted post-arbitration litigation." Givens, Supplemental Practice Commentary, General Business Law Section 198-a [McKinney's ed.] 1991. Respondent's refusal to comply required response regardless of the amount in controversy. Indeed, respondent's argument suggests that only those who win awards involving expensive cases should be compensated fully. Alternatively the argument may mean that those who are sold defective cheap cars should retain only the least expensive counsel available. Those

results are absurd as are respondent's arguments. Beside, the cases are to the contrary. *See e.g. State Farm Fire & Casualty Co. v. Palma*, 524 So. 2d 1035 (Fla App. 4 Dist., 1988) where $253,500 was awarded in attorneys' fees on a $600 claim.

Nor is respondent's liability restricted to the $1,500 retainer petitioner paid. The full fee has been billed monthly as the case went along and there is no reason why respondent should not pay it. Indeed similar retainers have resulted in fee awards in cases under Real Property Law § 234. (*See, e.g. 313 West 100th Street Tenants Assn. v. Kepasi*, 139 Misc 2d 57, modified 143 Misc 2d 566.

Similarly, here, the purpose of the attorneys' fees clauses in the promissory note was to encourage the defendant to pay according to the notes' terms, and to prevent the obligee "from being worn down by protracted … litigation."

The same principles apply in federal court.    In *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005), the United States Court of Appeals for the Second Circuit observed:

One sentence in the court's opinion seems to suggest that the court considered the fee application disproportionate to the financial value of this case. In reviewing plaintiff's application for attorney's fees, the court stated, in apparent astonishment: "This results in a total legal fee application of $75,825 for a case in which plaintiff received a verdict of $2500." If the district court reduced the fee based on the perceived disproportionality of such a large fee in a matter involving only $2500, this was error …. [I]n litigating a matter, an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel and of the court. If the attorney is compelled to defend against frivolous motions and to make motions to compel compliance with routine discovery demands, or to respond to unreasonable demands of the court for briefing or for wasteful, time-consuming court appearances, the hours required to litigate even a simple matter can expand enormously. It is therefore difficult to generalize about the appropriate size of the fee in relation to the amount in controversy.

Similarly, here, the plaintiff was required to defend against and overcome frivolous allegations of fraud seeking recovery against the plaintiff, as well as affirmative defenses based on the same frivolous allegations.  Toscano had the opportunity to stop the bleeding after this

Court's initial decision granting the plaintiff summary judgment but he refused to withdraw his counterclaim which was premised upon the same dismissed affirmative defense. The defendant advanced the counterclaim and affirmative defenses with full knowledge that he was ultimately responsible for all legal fees "in connection with" the suit, since the note and mortgage allowed for attorney's fees in connection with prosecuting all matters related to the debt and defending all actions arising out of the note and mortgage.

It was the defendant's own affirmative conduct to which a substantial portion of the fees are therefore attributable.

In *Cho v. Koam Medical Services P.C.*, 524 F.Supp.2d 202, 211 (E.D.N.Y. 2007), the District Court held:

> While this amount may seem excessive in light of the damages awards, the Supreme Court has made clear that there is no per se "proportionality" rule between the damages award to a successful plaintiff and the amount of attorneys' fees available, *see City of Riverside v. Rivera*, 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), and the Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation," *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (citing *Cowan v. Prudential Insurance Co. of America*, 935 F.2d 522 (2d Cir. 1991), *DiFilippo v. Morizio*, 759 F.2d 231 (2d Cir. 1985), *Lunday v. City of Albany*, 42 F.3d 131 (2d Cir. 1994) (per curiam), *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153 (2d Cir. 1992), and *Grant*, 973 F.2d 96).

In *Vilkhu v. City of New York*, 2009 WL 1851019, at *14 (E.D.N.Y. 2009), the District Court held:

> As previously noted, defendants mounted an extremely vigorous defense in this case, which required plaintiff's attorneys to expend large quantities of time responding to defendants' various requests, refusals, and court petitions. As the Second Circuit has noted:
>
>> [I]n litigating a matter, an attorney is in part reacting to forces beyond the attorney's control, particularly the

15

conduct of opposing counsel and of the court. If the attorney is compelled to defend against frivolous motions and to make motions to compel compliance with routine discovery demands, or to respond to unreasonable demands of the court for briefing or for wasteful, time-consuming court appearances, the hours required to litigate even a simple matter can expend enormously.

*Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005); *see also City of Riverside v. Rivera*, 477 U.S. 561, 581, 106 S.Ct. 2686, 91 L.Ed.2d 466 n 11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (internal citation omitted).

Similarly, in the instant case, the defendant "mounted an extremely vigorous defense in this case, which required plaintiff's attorneys to expend large quantities of time ...." The defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."

Magistrate Boyle's well-reasoned report and recommendation on the issue of attorney's fees cites to ample authority to support the decision that the hours and the rates were reasonable.

The defendant undertook to pay the full attorneys fees incurred in connection with any litigation necessitated by his refusal to pay. He should now be held to his bargain and Magistrate Boyle's report and recommendation affirmed.

### Conclusion

Toscano continues to allege plaintiff's "wrongful conduct" unnecessarily delayed the action resulting in additional interest and unnecessary legal fees. The history of this case highlights the folly of this argument. Toscano made the same argument in opposition to the plaintiff's motion for summary judgment. This Court ignored said argument and granted the plaintiff's motion in its entirety. Toscano again argued alleged "wrongful conduct" when opposing plaintiff's motion to dismiss his counterclaim and third party claims. This Court

dismissed all of Toscano's claims and, again, implicitly found plaintiff's conduct entirely proper. In fact, upon reading both decisions, this Court does not suggest or insinuate plaintiff committed a single "wrongful" act or undertook any acts to unnecessarily delay or extend litigation. Rather, plaintiff, faced with baseless counterclaims and third party claims, moved for summary judgment as a means to expedite a resolution, thereby preserving both client and judicial resources.

Toscano, by his attorneys, attempts to rehash the same tired arguments but fails to demonstrate any error on the part of Magistrate Boyle. Indeed, the record reflects that all of the defendant's arguments were considered in the report and recommendation.

Plaintiff requests that the Court affirm the report and recommendation of Magistrate Boyle in its entirety. Plaintiff further requests all costs and attorney's fees associated with the filing of this reply in the amount of $5,310.83 (Exhibit "3" hereto) along with the additional per diem rates provided for in Magistrate Boyle's decision.

Dated: Mineola, New York
      March 31, 2010

                    Respectfully submitted,

                    **LYNN, GARTNER & DUNNE, LLP**
                    *Attorneys for Plaintiff 4B's Realty 1530 CR 39, LLC*

By: _____
                    Stephen W. Livingston

                    330 Old Country Road, Suite 103
                    Mineola, New York 11501
                    (516) 742-6200