**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
4 B's REALTY 1530 CR39, LLC,

          Plaintiff,

      -against-

ANGELO TOSCANO, SOUTHAMPTON BRICK
& TILE, LLC, UNITED STATES OF AMERICA,
STATE OF NEW YORK, ABC CORP., XYZ
CORP. (Said names being fictitious, it being the
intention of Plaintiff to designate any and all
occupants or premises being foreclosed herein, and
any parties, corporations or entities, if any, having
or claiming an interest or lien upon the Mortgaged
Premises),
               Defendants.
----------------------------------------------------------X
ANGELO TOSCANO,

         Third-Party Plaintiff,

      -against-

BERT E. BRODSKY and BARNETT BROWN,

        Third-Party Defendants.
----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
08-CV-2694(ADS)(ETB)

**APPEARANCES:**

**Lynn, Gartner & Dunne, LLP**
Attorneys for the Plaintiff and Third-Party Defendants Bert E. Brodsky and
Barnett Brown
330 Old Country Road, Suite 103
Mineola, NY 11702
   By: Stephen W. Livingston, Esq, Of Counsel

**Richard A. Kraslow, P.C.**
Attorney for Defendant Angelo Toscano
425 Broad Hollow Road, Suite 206
Melville, NY 11747
   By: Richard A. Kraslow, Esq., Of Counsel

**Brody, O'Connor & O'Connor**
Attorneys for Defendant Southampton Brick and Tile, LLC
7 Bayview Avenue
Northport, NY 11768
By: Aisha K. Brosnan, Esq., Of Counsel

**SPATT, District Judge**

Presently before the Court are objections to a Report and Recommendation of United

States Magistrate E. Thomas Boyle dated March 8, 2010 addressing the calculation of damages

in the above-captioned litigations between 4B's Realty 1530 CR39 LLC ("4B's Realty"), 4B's

Realty's principals, Bert E. Brodsky ("Brodsky") and Barnett Brown ("Brown") (collectively

"the Third-Party Defendants"), and Angelo Toscano ("Toscano"). For the reasons set forth

below, the Court accepts in part and modifies in part Judge Boyle's Report.

## I. BACKGROUND

Toscano holds a 50% stake in Southampton Brick & Tile, LLC ("SBT"), a wholesaler

and retailer of masonry and tile products. The remaining interest is held by 4B's Realty, a

separate corporation controlled by Brodsky and Brown. SBT is the tenant at 1530 County Road

39 ("the 1530 Property"), a property in Southampton that was owned by Toscano until December

of 2008. In 2004, Toscano executed a promissory note ("the Note") with HSBC Bank ("HSBC")

that was secured by a mortgage on the 1530 Property. The Note was guaranteed by SBT,

Brodsky and Brown.

On or about March 31, 2007, Toscano defaulted on the Note. As guarantors, Brodsky

and Brown were required to satisfy Toscano's obligations to HSBC. In exchange for satisfying

the loan terms, HSBC subsequently assigned the mortgage on the property to 4B's Realty. In

November of 2007, the Plaintiff commenced a mortgage foreclosure action in New York State

Supreme Court, Suffolk County to foreclose on the 1530 Property. In that action, Toscano

asserted a counterclaim for fraud against 4B's Realty as well as a third-party fraud claim against Brodsky and Brown. In April of 2008, 4B's Realty moved for summary judgment in the foreclosure action. Toscano defended against the motion, arguing that his default had been induced by fraudulent misrepresentations on the part of Brodsky and Brown.

In an Order dated June 19, 2008, the Supreme Court denied 4B's Realty's motion for summary judgment. Although the Supreme Court recognized that 4B's Realty had established a prima facie showing of its entitlement to summary judgment, it found that Toscano's affidavit in opposition raised a triable issue of fact as to whether his default was procured by fraud on the part of Brodsky and Brown. On June 30, 2008, 4B's Realty moved for reargument of the motion in the Supreme Court. However, in July of 2008, while the motion for reargument was pending, the United States, which had been named as a Defendant because of a tax lien recorded on the property, removed the action to this Court.

On December 23, 2008, Toscano entered into a contract for the sale of the Southampton property. At the closing, Toscano instructed the purchaser to tender two separate checks to 4B's Realty totaling $2,230,735.97, the amount Toscano alleges that 4B's Realty demanded to satisfy the debt. However, in a letter dated December 22, 2008, Toscano's attorney, Richard Kraslow ("Kraslow"), informed 4B's Realty that his client "contests the validity of the amount claimed to be due and owing by [the Plaintiff] and expressly reserves his right to contest Plaintiff's claims for interest, legal fees and/or late charges." By letter dated December 23, 2008, 4B's Realty advised Toscano that it would not accept his tender.

On January 6, 2009, 4B's Realty sought reconsideration of its motion for summary judgment of foreclosure in this Court. In an Order dated March 12, 2009, the Court granted 4B's Realty's motion. See 4 B's Realty 1530 CR39, LLC v. Toscano ("Toscano I"), 08-CV-2694,

2009 WL 702011 (E.D.N.Y. Mar. 12, 2009). First, the Court held that Toscano's offer of payment in December of 2008 was not a valid tender because it was conditioned upon his right to contest the amount due. Id., at *2–3. As a result, the Court held that 4B's Realty was "justified in refusing such a tender because it was not a valid satisfaction of Toscano's alleged debt" and therefore Toscano's conditional offer of payment did not moot the foreclosure action. Id. The Court then turned to the merits of the motion and granted the motion for summary judgment of foreclosure, finding that Toscano's allegations of fraud were unsubstantiated and insufficient to survive summary judgment. Id., at *6. In particular, the Court determined that Toscano offered no evidence confirming the alleged oral modifications of the Note terms and found that even if the terms had been modified, Toscano's reliance on those alleged modifications was not reasonable. Id.

After the Court granted 4B's Realty's motion for summary judgment, the remaining issues in the case were Toscano's counterclaim for fraud against 4B's Realty and a third-party claim for fraud against Brodsky and Brown. In an Order dated November 7, 2009, the Court granted the motions by 4B's Realty and the third-party defendants for summary judgment on the remaining claims. See 4 B's Realty 1530 CR39, LLC v. Toscano ("Toscano II"), 08-CV-2694, Docket Entry # 43 (E.D.N.Y. Nov. 7, 2009). The Court found that Toscano's fraud counterclaim against 4B's Realty was barred by the doctrine of collateral estoppel based on the Court's holding in Toscano I that Toscano had failed to offer sufficient evidence of fraud on the part of the third-party defendants. Id. at * 9. In addition, the Court dismissed Toscano's third-party fraudulent inducement claim, holding that:

> Toscano is a sophisticated businessman who was represented by counsel
> in an arms-length transaction with business partners. Under the
> circumstances, having failed to memorialize the alleged oral
> representations, Toscano is now unable to make the required showing

4

that he reasonably relied on those representations in agreeing to the transfer.

Id., at *12. On November 14, 2009, the Court referred this matter to United States Magistrate Judge E. Thomas Boyle to compute the amount due and owing to 4B's Realty under the Mortgage. Judge Boyle held a damages hearing on January 14, 2010.

On March 8, 2010, Judge Boyle issued a Report and Recommendation ("the Report"), recommending that the Court award 4B's Realty the following damages:

> (1) the principal amount of the mortgage and promissory note in the amount of $1,700,000; (2) interest in the amount of $550,253.07; (3) attorney's fees and costs in the amount of $150,633.48; (4) interest on the attorney's fees and costs in the amount of $15,161.96; (5) a late penalty in the amount of $120,802.43; and, (6) post-judgment interest, to be calculated pursuant to 28 U.S.C. § 1961.

(Report at 14.) Judge Boyle further recommended that "additional interest be calculated from March 9, 2010 through the date of judgment entered herein at a rate of $675.23 per day and that additional late fees also be calculated from March 9, 2010 through the date of judgment at a per diem rate of $33.76." (Id.)

Toscano filed timely objections to the Judge Boyle's Report.

## II. DISCUSSION

### A. Standard of Review

A court is required to make a de novo determination as to those portions of the report and recommendation to which objections were made. 28 U.S.C. § 636(b)(1)(C); Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989). The phrase " de novo determination" in Section 636(b)(1)—as opposed to "de novo hearing"—was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. 667, 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980). Section 636 does not require a court "to rehear the contested testimony

5

in order to carry out the statutory command to make the required 'determination.'" Id. at 674,

100 S. Ct. 2406. Rather, in making such a determination, a court may in its discretion review the

record and hear oral argument on the matter. See Pan Am. World Airways, Inc. v. Int'l Bhd. of

Teamsters, 894 F.2d 36, 40 n. 3 (2d Cir. 1990). Furthermore, a court may in its sound discretion

afford a degree of deference to the magistrate's report and recommendation. See Raddatz, 447

U.S. at 676, 100 S. Ct. 2406, 65 L.Ed.2d 424.

In case where a party "makes only conclusory or general objections, or simply reiterates

his original arguments, the Court reviews the Report and Recommendation only for clear error."

Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-

CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). "Furthermore, even in a de novo

review of a party's specific objections, the Court ordinarily will not consider 'arguments, case

law and/or evidentiary material which could have been, but were not, presented to the magistrate

judge in the first instance.'" Fairfield Financial Mortg. Group, Inc. v. Luca, 2011 WL 3625589,

at *2 (E.D.N.Y. Aug. 16, 2011).

## B. Toscano's Objections

The Defendant contends that Judge Boyle erred in: (1) failing to take into account

equitable considerations in awarding the Plaintiff interest after December of 2008; (2) awarding

the Plaintiff compound interest; (3) awarding the Plaintiff late fees; and (4) awarding the

Plaintiff attorneys' fees at the requested amount. The Court addresses each of these objections in

turn.

### 1. Equitable Considerations

According to the Defendant, equitable considerations require a reduction in the interest

awarded because (1) Toscano was justified in refusing to unconditionally meet the Plaintiff's

payoff demand in December 2008; (2) the Plaintiff acted with unclean hands by submitting their calculation of damages on the last day allowable by Judge Boyle's scheduling order and by submitting the Affidavit of Stephen Linker, CPA ("Linker Affidavit"), which erroneously calculated the interest rate.

A mortgage foreclosure is an equitable remedy, and under New York law ". . . in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion". N.Y. C.P.L.R. § 5001(a) (McKinneys 2007). A court's exercise of that discretion is "governed by the particular facts in each case, including any wrongful conduct by either party". Danielowich v. PBL Dev., 292 A.D.2d 414, 415, 739 N.Y.S.2d 408, 409 (2d Dep't 2002). Where the plaintiff engages in an unreasonable delay in the sale of the property or the resolution of the foreclosure action, courts have generally found that equitable considerations warrant a denial of an award of any interest or penalties accrued after the wrongful conduct. See Dayan v. York, 51 A.D.3d 964, 965, 859 N.Y.S.2d 673, 675 (2d Dep't 2008) ("Under the unusual circumstances of this case, it would be unconscionable to charge Joseph York with accrued interest and penalties for the plaintiff's delay in completing the foreclosure action."); Sloane v. Gape, 216 A.D.2d 285, 286, 627 N.Y.S.2d 785, 786 (2d Dep't 1995) (holding that because there was merit to the defendant's argument that the plaintiff wrongfully denied him the right to redeem the property, equitable considerations warranted a finding that the plaintiff was not liable for payment of the interest which accrued on the judgment after the wrongful denial).

First, the Defendant argues that the Plaintiff was required to accept his conditional offer of payment in December 2008 because the Plaintiff's demand was inflated and unsupported. Thus, the Defendant contends that it was Plaintiff's "wrongful conduct" in submitting a deficient demand that has unduly delayed the resolution of this action. Therefore, the Defendant contends

that equitable considerations warrant the cessation of the calculation of interest in December of 2008. However, in Toscano I, the Court rejected the Defendant's argument that "his tender of $2,230,735.67 satisfie[d] his obligation on the Note" and held that the Plaintiff was "justified in refusing such a tender because it was not a valid satisfaction of Toscano's alleged debt". Id., at 2009 WL 702011, at *2–*3. The Defendant's current argument that the Plaintiff was required to accept his conditional offer of payment because the demand was inflated and unsupported—a contention for which the Defendant offers no legal authority—is an improper attempt to reargue the Court's ruling in Toscano I that the Plaintiff was justified in its refusal of the tender.

In addition, the Defendant contends that the Plaintiff engaged in wrongful conduct by submitting its detailed computation of damages on the last day for submission and for submitting an expert affidavit that contained errors with regards to the applicable LIBOR rate. The Court finds no wrongful conduct in the Plaintiff submitting its damages calculation within the deadline set by Judge Boyle. Furthermore, the Court finds no evidence of "unreasonable delay" caused by any errors in the Linker Affidavit. Accordingly, the Court affirms Judge Boyle's finding that the Plaintiff is entitled to interest as specified in the Note from the date of the default through the date of judgment.

### 2. Compound Interest

The Defendant argues that Judge Boyle erred in calculating the interest at a compound rate because the Note does not "expressly" provide for compound interest.

As explained by the New York Court of Appeals:

> Compound interest is commonly defined as "interest on interest" or interest that is "paid on *both* the principal and the previously accumulated interest" (Black's Law Dictionary 817 [7th ed 1999] [emphasis added]). This contrasts with simple interest, which is "paid on the principal *only* and not on accumulated interest" (id. [emphasis added]). The difference between these two formulations is that simple

8

interest does not merge with principal and thus does not become part of the base for the computation of future interest.

Spodek v. Park Prop. Dev. Ass'n, 96 N.Y.2d 577, 580, 759 N.E.2d 760, 761, 733 N.Y.S.2d 674, 675 (2001) (emphasis in original). Generally, "agreements to pay compound interest have not found favor with the courts". Giventer v. Arnow, 37 N.Y.2d 305, 308, 333 N.E.2d 366,368, 372 N.Y.S.2d 63, 66 (1975). As a result, absent statutory authority—which is not present in the instant case—compound interest is only recoverable "where there is an express agreement between the parties". Gutman v. Savas, 17 A.D.3d 278, 279, 793 N.Y.S.2d 424, 425 (1st Dep't 2005); see In re West Bushwick Urban Renewal Area Phase 2, 50 A.D.3d 695, 695–96, 855 N.Y.S.2d 582, 583 (2d Dep't 2008) ("As the appellant correctly concedes in its brief, the mortgage agreement and note at issue did not include a provision expressly authorizing it to compound interest. Under such circumstances, compound interest is not recoverable.").

According to the Defendant, because the word "compound" was not included in the Note, Judge Boyle erred in awarding the Plaintiff compound interest. The Court does not read the requirement of an "express agreement" under New York law so literally. As long as the contract provides for the compounding of interest, whether or not the word "compounded" is included, the contract satisfies the requirement of an "express agreement". Here, the Note provides that "[i]nterest shall be computed on an actual/360 day basis (i.e. interest for each day during which any unpaid principal of this Note is outstanding shall be computed at the interest rate hereunder divided by 360)". Stephen Linker, a CPA and forensic account, testified at the hearing that based on his experience this provision represents an agreement to compound interest on a daily basis. The Court finds no error in Judge Boyle's decision to credit this testimony. Accordingly, the Court finds that the Plaintiff is entitled to interest compounded on a daily basis and affirms Judge Boyle's award of interest.

### 3. Late Fees

The Defendant argues that Judge Boyle erred in awarding the Plaintiff late fees because: (1) the Plaintiff did not expressly seek late fees in the complaint; (2) the Plaintiff did not pay late fees to HSBC; (3) there is an inconsistency between the late fee provisions in the Note and Mortgage; and (4) post-acceleration late charges are contrary to New York law. As set forth below, while the Court finds no procedural bar to the recovery of late fees, the Court ultimately finds that under the language of the Note, the Plaintiff is not entitled to late fees after the date of the acceleration of the debt.

First, the fact that the Plaintiff did not expressly seek late fees in the complaint does not prevent its recovery. As Judge Boyle correctly noted, the Mortgage and the Note were attached as exhibits to the complaint, and the complaint sought all amounts due under the annexed agreements. Thus, pursuant to Fed. R. Civ. P. 10(c) the late fee provisions of the Mortgage and the Note were incorporated into the complaint by reference. See <u>Paulemon v. Tobin</u>, 30 F.3d 307, 308-09 (2d Cir. 1994). Moreover, enforcing the remedies available in the Mortgage and Note is consistent with Fed. R. Civ. P. 54(c), which directs that courts "shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings". Thus, to the extent the Plaintiff is entitled to recover late fees under the Mortgage and the Note, the absence of a specific demand in the complaint does not foreclose the recovery.

Next, the Defendant contends that he and the Plaintiff are joint-obligors of the Note and the Mortgage, and therefore because the Plaintiff did not pay late fees to HSBC, the Defendant should not be required to pay late fees to the Plaintiff. However, contrary to the Defendant's unsupported assertion, the Court finds that the Plaintiff was a valid assignee of the Note and

10

Mortgage. As an assignee, the Plaintiff is entitled to collect any amounts that were due and owing to the assignor, HSBC, regardless of the amount that the Plaintiff paid in consideration for the assignment. Citibank, N.A. v. Tele/Resources, Inc., 724 F.2d 266, 269 (2d Cir. 1983) ("An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged.").

Nor does the Court find any conflict in the late charge provisions of the Note and the Mortgage. The relevant language of the documents in this case provide as follows:

- In the event that any payment due under the Mortgage or the Note secured hereby shall become overdue for a period in excess of ten (10) days, a "late charge" equal to five (5%) percent of any installment so overdue will be charged by the Mortgagee for the purpose of defraying the expenses incident to handling such delinquent payment. (Mortgage Rider § 25.)
- A late payment charge of five (5%) percent of any principal or interest payment made more than ten (10) days after the due date thereof shall be due with any such late payment (the "Late Payment Charge") (Note at 2.)

Both provisions impose a 5% late charge on overdue payments. The only difference between the provisions is that the Note also allows for late charges on overdue payments of principal.

Finally, the Defendant argues that late charges which accrue after the acceleration of the debt are not compensable. As explained below, although parties can modify this general rule through contract, the Court agrees with the Defendant that under the terms of the Note, the Plaintiff is not entitled to post-acceleration late charges.

Under New York law, "[i]n the absence of a provision in the mortgage to the contrary, the collection of late fees after a mortgage note has been accelerated is impermissible". Carreras v. Weinreb, 33 A.D.3d 953, 955, 826 N.Y.S.2d 72, 74 (2d Dep't 2006); Rizzo v. Pierce & Assocs., 351 F.3d 791, 793 n.1 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan

has been accelerated"). The basis for this general rule against awarding post-acceleration late charges is that it is "inconsistent to allow a lending institution to accelerate a note, thereby denying the debtor the right under the mortgage note to make monthly installments and to continue to insist on its own right under the note to impose monthly late charges". Green Point Sav. Bank v. Varana, 236 A.D.2d 443, 453, 653 N.Y.S.2d 656, 657 (2d Dep't 1997) (quoting Centerbank v. D'Assaro, 158 Misc. 2d 92, 95, 600 N.Y.S.2d 1015 (N.Y. Sup. Ct. 1983); see also Lasalle Bank Nat. Ass'n v. Shepherd Mall Partners, L.L.C., 140 P.3d 559, 562 (Okla. Civ. App. 2005) (noting that "the right to charge late fees ceases upon acceleration because monthly payments are not due after acceleration, so the lender no longer incurs expenses in processing delinquent payments"); cf. Rizzo, 351 F.3d at 793–94 (upholding the imposition of late fees after acceleration because the plaintiffs reinstated their mortgage after acceleration and therefore monthly payments remained due). As articulated by Judge Weil in In re Guarnieri, 297 B.R. 365 (Bankr. Conn. 2003):

> [t]he underlying logic of these cases is simple: once the borrower is in default and the loan is accelerated, the full amount of the loan becomes due immediately, and there remains no obligation by the borrower to continue making monthly payments. In the absence of an obligation to make monthly payments, payments cannot be "late."

Id. at 369; see also Centerbank v. D'Assaro, 158 Misc. 2d 92, 95, 600 N.Y.S.2d 1015, 1017 (N.Y. Sup. Ct. 1993) (holding that notwithstanding the fact that the language in the note identified the purpose of the late charge provision as "covering the expense resulting from handling such delinquent payment before and after maturity, including accelerated maturity", because the debtor's right and obligation to make monthly installment payments ceased after the debt was accelerated, a failure to make such payments could not be considered delinquent).

To determine whether a note provides for late fees after a mortgage note has been accelerated, courts look to the stated purpose of the late fee provision in the note. For example, courts will award late fees after acceleration where the note expressly provides for late fees as an additional form of damages following acceleration. See Orix Credit Alliance, Inc. v. Bell Realty, Inc., No. 93-CV-4949, 1995 WL 505891, at *9, *9 n.14 (S.D.N.Y. Aug. 23, 1995) (awarding late fees that accrued after acceleration upon finding that "the Note unequivocally provides for the imposition of late charges after default and acceleration" where the Note stated in no uncertain terms that late charges would continue to accrue after acceleration "calculated at one-fifteenth of 1% per day but not to exceed any maximum permitted by applicable law").

By contrast, where the language of the note provides for late charges on payments after default as a form of covering the expense of collecting the debt, but does not indicate that the late charges continue to accrue after acceleration, courts have stopped the calculation of late fees at the date of acceleration, which typically coincides with the service of the Summons and Complaint. See Centerbank, 158 Misc. 2d at 94, 600 N.Y.S.2d at 1017 (holding that based on the language of the note, the plaintiff was "entitled to all outstanding amounts which were due as of the date at which the declaration of default and demand was made", which the court identified as the date that the plaintiff served the Summons and Complaint because such service "formally accelerated the payment of the debt and repudiated the right of the defendant to make installment payments"); Gizzi v. Hall, 309 A.D.2d 1140, 767 N.Y.S.2d 469 (3d Dep't 2003) (holding that defendants were entitled to late charges that could be collected under the note for each late payment "until the time that defendants exercised the acceleration option by asserting it in their counterclaim").

13

The Plaintiff contends that because only interest payments were due under the Note, the reference to the imposition of late charges on "principal" anticipates post-acceleration late charges. The Court disagrees with the Plaintiff's reading of this provision and finds it analogous to those note provisions that impose late charges on principal payments owed after default, but prior to the acceleration of the debt. This interpretation is further supported by the fact that, unlike in Orix, in detailing the amounts recoverable to enforce the provisions of the Note upon the Defendant's default, the Note makes no reference to late charges. Instead, the Note requires the Defendant to pay the "unpaid principal and interest . . ., reasonable attorneys' fees, together with all costs and expenses". (Note at 5–6.) See Centerbank,158 Misc. 2d at 95, 600 N.Y.S.2d at 1018 (holding that "any expense of collecting the debt is fully covered by [the provision of the mortgage] which provides for attorney's fees and cost for foreclosure of the mortgage"); see also Security Mut. Life Ins. Co. of New York v. Contemporary Real Estate Assocs., 979 F.2d 329, 331 (3d Cir. 1992) ("Nor do the equities favor an interpretation of the note to cover late charges after the act of acceleration. Security Mutual's judgment included prejudgment interest at the rate of 12.25% per annum from March 1, 1991, through the judgment date, March 11, 1992. This interest certainly constitutes full compensation for any lost use of the funds during that period. Furthermore, the expense of collecting is fully covered within the note provision imposing attorneys' fees and costs of collection on defendants.").

Accordingly, the Court finds that the Plaintiff is not entitled to post-acceleration late charges, and modifies Judge Boyle's award of late charges to only include the late charges which accrued prior to the commencement of the foreclosure action.

### 4. Attorneys' Fees

In the Second Circuit, attorney's fees are determined by calculating the "presumptively reasonable fee". Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117–18 (2d Cir. 2007), amended on other grounds, 522 F.3d 182 (2d Cir. 2008). The "presumptively reasonable fee" is "comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours". Finkel v. Omega Commc'n Servs., Inc., 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing Arbor Hill, 522 F.3d at 189); see Cruz v. Local Union No. 3 of the Int'l Bd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994). In assessing the presumptively reasonable fee, the Second Circuit has instructed that courts should consider the factors articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974). See Arbor Hill, 522 F.3d at 190. As summarized by the Second Circuit, the Johnson factors relevant to a court's consideration are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186 n.3 (citing Johnson, 488 F.2d at 717–19).

Here, the Plaintiff does not object to the reasonable hourly rate, but rather to the calculation of the reasonable hours expended. Although the Court agrees with Judge Boyle's determination of the reasonable hours expended, the Court modifies Judge Boyle's recommendation that the reasonable hourly rate for the work of Robert P. Lynn, Kenneth L. Gartner, and John W. Dunne should be set at $420.

15

### a. Reasonable Hourly Rate

A reasonable hourly rate is "the rate a paying client would be willing to pay," which a court should determine "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. In addition, in assessing an attorney's reasonable hourly rate, a court is also required to adhere to what is referred to as the "forum rule". Pursuant to the "forum rule", the Second Circuit has instructed that courts should use the "prevailing [hourly rate] in the community" in determining the reasonable hourly rate. Id. (citing Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541, 79 L.Ed.2d 891 (1984)). For the purposes of calculating the reasonably hourly rate under the forum rule, the relevant "community" is "the district where the district court sits". Id. (citing Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)); see also Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) (finding that district court did not abuse its discretion by reducing fees so that they were line with other fees awarded in the Eastern District of New York); Luciano v. Olsten Corp., 109 F.3d 111, 115–116 (2d Cir. 1997) (holding that district court, in setting fees, appropriately relied upon prevailing market rates in the Eastern District of New York where the case was commenced and litigated).

In granting the Plaintiff's request to set the hourly billing rate for Mr. Lynn, Mr. Gartner, and Mr. Dunne at $420 per hour, Judge Boyle stated: "Based on the case law in this district, I find that the hourly billing rates requested by plaintiff's counsel, while on the higher side of the continuum, still fall within the range considered fair and reasonable". (Report at 9.) However, a review of the case law reveals that $420 per hour is in excess of the prevailing hourly rate in this district. See Konits v. Karahalis, 409 F. App'x 418, 422–23 (2d Cir. 2011) (affirming a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District

of New York range from approximately $300 to $400 per hour). Furthermore, as the Second Circuit noted in Arbor Hill "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate". Arbor Hill, 522 F.3d at 184 n.2.

In Melnick v. Press, No. 06-CV-6686, 2009 WL 2824586 (E.D.N.Y. Aug. 28, 2009), Judge Bianco performed an exhaustive review of the case law discussing the "prevailing market rates in the Eastern District of New York for lawyers in comparable cases involving real property disputes". 2009 WL 2824586, at *9 (collecting cases). Based on this review, Judge Bianco concluded that "the range of appropriate billing rates is $200-$375 per hour for partners and $100–$295 per hour for associates". Id. (collecting cases); see also Kochisarli v. Tenoso, No. 02-CV-4320, 2008 WL 1882662, at *7 (E.D.N.Y. Apr. 24, 2008) ("[F]or actions in this District involving mortgages and promissory notes attorney's fees have been approved in the range of $150 to $175 (for senior associates) and $200 to $250 for partners").

Although the Court does not dispute that Mr. Lynn, Mr. Gartner, and Mr. Dunne have a considerable amount of experience, this alone does not support an hourly rate in excess of the prevailing rates for attorneys in this District involving mortgages and promissory notes. Weighed against consideration of the other Johnson factors, the Court finds that the hourly rate of $375 takes into account Mr. Lynn, Mr. Gartner, and Mr. Dunne's legal experience; the substantive and procedural demands of this litigation; and their expenditure of time and resources. In addition, the Court finds that this hourly rate represents that which a reasonable client would be willing to pay for the services rendered.

### b. Reasonable Hours Expended

After determining the reasonable hourly rate, a court must evaluate the number of hours reasonably billed to the matter in order to arrive at the presumptively reasonable fee. Arbor Hill,

522 F.3d at 189–90. In reviewing voluminous fee applications, it is unrealistic to expect courts to "evaluate and rule on every entry in an application." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983). Thus, the Court will only evaluate those areas to which the Defendant has objected.

The Defendant argues that Judge Boyle erred in calculating the hours that the Plaintiff's attorneys reasonably expended in litigating this action because this action is not complex and because Judge Boyle did not discount "all the time relating to research of Federal jurisdiction and conversations between Plaintiff's counsel and the attorney for Defendant SB&T", which the Defendant contends was "unnecessary and unproductive". (Def.'s Br. at 9–10.) The Court finds that these objections lack merit.

Pursuant to New York Real Property Actions and Proceeding Law § 1311, a plaintiff in a mortgage foreclosure action is required to join, as a party defendant, any person "whose interest is claimed to be subject and subordinate to the plaintiff's lien". N.Y. R.P.A.P.L. § 1311 (McKinneys 2008). Under the statute, "any person" is defined to include, among others, "person[s] having an estate or interest in possession, or otherwise, in the property as tenant . . ." and "person[s] having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff". Id. Thus, because the United States had a tax lien recorded on the Mortgaged Property and SB&T was the tenant of the Mortgaged Property, the Plaintiff properly named both parties as defendants in the action.

Moreover, the Court finds that the fees and costs incurred by the Plaintiff in resolving the dispute with the United States over the priority of the tax lien were reasonable. The United States removed this action to federal court based on a tax lien recorded on the property. As a result, counsel for the Plaintiff was required to research not only federal jurisdiction, but also the

18

priority of the Mortgage over the federal tax lien. The fact that the Plaintiff resolved its dispute with the United States through correspondence rather than motion practice does not relieve the Defendant of its obligation under the Mortgage to pay reasonable attorneys' fees. The Mortgage specifically provides for reasonable attorney's fees "arising out of or in connection with . . . any and all lawful action that may be taken by the Mortgagee in connection with the enforcement of the provisions of this Mortgage or the Note . . . whether by negotiation, legal proceedings or otherwise and whether or not suit is filed in connection therewith . . . ." (Mortgage ¶ 23(c) (emphasis added).)

Finally, with regard to the complexity of the case, Judge Boyle stated as follows:

> This was not as simple an action as Toscano would have the Court believe. Rather, it was a very long and protracted litigation, due mostly to Toscano's efforts to frustrate a resolution at every turn. Even after Judge Spatt granted plaintiff summary judgment on its foreclosure claim, Toscano still sought to relitigate issues already disposed of by Judge Spatt at the inquest held before the undersigned. Accordingly, the hours incurred by plaintiff's counsel were necessary and reasonable.

(Report at 9–10.) The Court could not have said it any better. Substantively this case was not any more complex than a typical mortgage foreclosure action. However, this is not the only factor relevant to the Court's consideration of whether a fee is reasonable. In Kassim v. City of Schenectady, 415 F.3d 246 (2d Cir. 2005), the Second Circuit explained that a fee application could still be reasonable even when disproportionate to the monetary value of the case because:

> in litigating a matter, an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel and of the court. If the attorney is compelled to defend against frivolous motions and to make motions to compel compliance with routine discovery demands, or to respond to unreasonable demands of the court for briefing or for wasteful, time-consuming court appearances, the hours required to litigate even a simple matter can expand enormously.

Id. at 252. The Court finds this rationale equally applicable to the instant case. Although the fee application is disproportionate to the substantive complexity of the case, the Plaintiff's conduct throughout this litigation necessitated an expenditure of attorney time and resources beyond what this type of action would normally require. Accordingly, the Court affirms Judge Boyle's finding that the Plaintiff is entitled to attorney's fees for all of the invoiced hours.

### III. CONCLUSION

For the foregoing reasons, Judge Boyle's Report and Recommendation is accepted in part and modified in part as set forth herein. The Plaintiff is directed to submit to the Court within ten days of the date of this order, a proposed judgment with an updated calculation of damages providing for: (1) the outstanding principal and interest to date calculated in the manner set forth in Judge Boyle's Report; (2) applicable late fees incurred up until the date that the instant foreclosure action was commenced and interest on the late fees to date; (3) attorneys' fees and costs for the invoices submitted as Exhibit 13 to the Affirmation in Support of Payoff Calculation (Docket Entry # 49) and as Exhibit 2 to the Plaintiff's reply to the Defendant's objections (Docket Entry # 64), with attorneys' fees calculated at the hourly rates set forth herein; (4) interest on the attorneys' fees and costs calculated consistent with Judge Boyle's Report; and (5) post-judgment interest, to be calculated pursuant to 28 U.S.C. §1961.

**SO ORDERED.**
Dated: Central Islip, New York
October 12, 2011

                                            _/s/ Arthur D. Spatt_____
                                            ARTHUR D. SPATT
                                            United States District Judge